## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ELLIOT KIRKLAND, | ) | Case No. 4:23-cv-00305 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge James E. Grimes |
| | ) | |
| ODRC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

*Pro se* Plaintiff Elliot Kirkland brought this civil rights action alleging that various law enforcement officials at Trumbull Correctional Institution used excessive force against him and provided inadequate medical treatment.  Defendants move to dismiss the claims against them under Rule 12(b)(1) and Rule 12(b)(6).  (ECF No. 18.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

### STATEMENT OF FACTS

Taking the facts alleged in the amended complaint and supplemental filing as true and construing them in Plaintiff's favor, as the Court must on the motion before it, Mr. Kirkland bases his claims on the following facts.

### A.    January 2023 Incident

Mr. Kirkland is incarcerated at the Ohio Department of Rehabilitation and Correction Toledo Correctional Institution, but the events leading to this suit occurred at Trumbull Correctional Institution.  (*See* ECF No. 6, PageID #33.)  On

January 19, 2023, between 1:30 p.m. and 1:50 p.m., Defendant Correctional Officer Emmanuel Simpson and Mr. Kirkland had a verbal alteration—leading to Mr. Kirkland's assault of Officer Simpson.  (ECF No. 6, PageID #24.)  In response, Officer Simpson handcuffed Mr. Kirkland.  (*Id.*)  Mr. Kirkland did not resist.  (*Id.*)  Officer Simpson then "continually" "stomp[ed]" on the back of his head and carried him across a courtyard.  (*Id.*)  Then, he twisted Mr. Kirkland's wrists in the handcuffs so much that it caused "permanent nerve damage."  (*Id.* at PageID #24–25.)  This entire interaction was recorded.  (*Id.* at PageID #24.)

In response to Mr. Kirkland's assault, Lieutenant James Davis and Lieutenant Ronald Prate, also named as Defendants, used Mr. Kirkland's head as a battering ram to open a door, causing a knot to form on his head.  (*Id.*; ECF No. 23-2, PageID #122.)  Then, Lt. Davis strip-searched Mr. Kirkland and recorded the interaction on body cam.  (ECF No. 6, PageID #24; ECF No. 23-2, PageID #122.)  Lt. Prate kneed Mr. Kirkland in the face, spit on him, and placed him in solitary confinement.  (ECF No. 6, PageID #24.)

### B.    Medical Treatment on March 25, 2023

On March 25, 2023, between 8:00 a.m. and 8:45 a.m., a nurse visited Mr. Kirkland and informed him that he would see a doctor about his allergy symptoms.  (ECF No. 8, PageID #40.)  Sometime after that, an officer handcuffed Mr. Kirkland in his cell.  (*Id.*)  Later, a nurse returned to his cell and administered two shots of "kenamean" without wearing gloves or taking other precautionary sanitary measures.  (*Id.*)  The nurse told Mr. Kirkland that he would not be able to see a doctor after all and that he was sick and needed the shot.  (*Id.*)  Mr. Kirkland

2

requested to see a doctor again, but the nurse refused. (*Id.*) After the shot, Mr. Kirkland suffered side effects like heartburn and grogginess. (*Id.*) Also, the nurse did not inform Mr. Kirkland of any potential side effects of the shots. (*Id.*) Mr. Kirkland alleged that this incident was "malpractice" and in combination with his poor cell conditions, constituted cruel and unusual punishment. (*Id.*)

### C.    Additional Facts

On March 6, 2023, Lt. Davis removed Mr. Kirkland from his cell after Mr. Kirkland inquired about his "legal work." (ECF No. 6, PageID #25.) Officers took him to a new cell, shackled him, and did not provide a mat or running water for three days. (*Id.*) Officers then threatened Mr. Kirkland with pepper spray, conducted a recorded strip search, and placed him in a suicide gown. (*Id.*)

In his response to Defendants' motion to dismiss, Mr. Kirkland alleged various other ODRC policy violations by different jail employees—including, among other things, tampering with his mail, officers spitting on his food, and harassment. (*See* ECF No. 23-2, PageID #122–26.)

### STATEMENT OF THE CASE

Plaintiff filed an amended complaint on March 30, 2023 (ECF No. 6) and a voluntary statement of facts on April 3, 2023 (ECF No. 8). Based on Plaintiff's pleadings, he brings a Section 1983 action against nine defendants: ODRC, Annette Chambers-Smith (its Director), Lt. Ronald Prate, Officer Emmanuel Simpson, Warden James Davis, Major Marcus Hill, Lt. James Davis, a mail room supervisor, and the State of Ohio. (ECF No. 6; ECF No. 18.) Plaintiff seeks $1.5 million in compensatory relief. (ECF No. 1, PageID #14.) On August 28, 2023, Defendants

Chambers-Smith, Davis, Davis, Hill, ODRC, Prate, and Simpson moved to dismiss the case under Rule 12(b)(1) and Rule 12(b)(6).  (ECF No. 18, PageID #96.)  On October 16, 2023, Plaintiff filed a response to Defendants' motion (ECF No. 23-2, PageID #118), and Defendants subsequently filed a reply (ECF No. 24, PageID #129).

## JURISDICTION

A motion to dismiss under Rule 12(b)(1) challenges a Court's subject matter jurisdiction.  Federal courts are courts of limited jurisdiction.  Unlike State trial courts, they do not have general jurisdiction to review all questions of law.  *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008).  Instead, federal courts have only the authority to decide cases that the Constitution and Congress empower them to resolve.  *Id.*  Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Under Rule 12(b)(1), the standard of review "depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction."  *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 920, 330 (6th Cir. 2007)).  Unlike a factual attack, which requires the district court to analyze conflicting evidence to determine if jurisdiction exists, a facial attack "challenges the jurisdictional sufficiency of the complaint given those facts."  *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "When reviewing a facial

4

attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted). Plaintiff has the burden of establishing subject matter jurisdiction to survive a dismissal under Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Defendants argue that Plaintiff failed to allege a constitutional deprivation sufficient to invoke the Court's subject matter jurisdiction. A claim fails to invoke the Court's subject matter jurisdiction where it is obviously frivolous and insubstantial. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (citing numerous Supreme Court cases for the proposition that patently frivolous, attenuated, or insubstantial claims divest the district court of jurisdiction, but ultimately finding that the plaintiffs' Section 1983 claims were not unsubstantial or wholly frivolous).

Defendants challenge the Court's subject matter jurisdiction by arguing that the amended complaint lacks a short plain statement of the grounds for jurisdiction. (ECF No. 18, PageID #100.) Plaintiff's civil cover sheet incorrectly indicates that the basis for jurisdiction is that the United States Government is a party to the suit. (ECF No. 6-1, PageID #26.) Ignoring that error, Plaintiff's civil cover sheet does indicate a cause of action for, among other things, a violation of civil rights. (*Id.*) Moreover, the facts alleged in his amended complaint refer to the use of potentially excessive force by several Defendants who are employees of the State of Ohio. The

Sixth Circuit recognizes prisoner claims of excessive force under the Eighth Amendment. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Therefore, Plaintiff's *pro se* complaint is best characterized as asserting a claim under 42 U.S.C. § 1983, specifically that, acting under color of law, Defendants violated his Eighth Amendment rights by use of excessive force. *See Watkins v. City of Kalamazoo*, No. 1:15-cv-997, 2016 WL 3748979, at *1–*2 (W.D. Mich. Apr. 16, 2016) (construing a *pro se* plaintiff's complaint as alleging a claim under Section 1983 based in part on the civil cover sheet indicating the action involved "other civil rights"); *Hubbard v. Sanders*, No. 1:13-cv-2393, 2014 WL 2123586, at *2 (N.D. Ohio May 21, 2014) (inferring a Section 1983 claim based on the plaintiff's *pro se* status and the nature of his allegations absent any other indication of a federal jurisdictional basis for his complaint).

Additionally, Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff's amended complaint "lacks requested relief." (ECF No. 18, PageID #100.) Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Defendants are correct that Plaintiff did not request any relief in the section of his standard prisoner complaint entitled "RELIEF" (ECF No. 6, PageID #25), his Civil Cover Sheet lists a demand for $1.5 million under "Section VII: Requested in Complaint." (ECF No. 6, PageID #26.) Liberally construing Plaintiff's *pro se* complaint with his Civil Cover Sheet, the Court holds that Plaintiff has adequately pled a prayer for monetary relief. *See Jeter v. Lawless*, No. 1:19-cv-623,

6

2020 WL 1914807, at *2 (S.D. Ohio April 20, 2020) (relying on the civil cover sheet to supplement a *pro se* complaint when ruling on a motion to dismiss under Rule 12(b)(6)).

For these reasons, the Court **DENIES** Defendants' motion under Rule 12(b)(1) and determines that it has subject matter jurisdiction.

## ANALYSIS

Rule 12(b)(6) provides that a court can dismiss a complaint if it fails to state a claim on which relief can be granted. A Rule 12(b)(6) motion tests "the plaintiff's cause of action as stated in the complaint," it is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 489–90 (6th Cir. 1990). When determining whether the plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers,

*Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). At this stage of the proceedings, even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal. *Iqbal*, 556 U.S. at 678.

## I.     Eleventh Amendment

Defendants argue that the Eleventh Amendment bars Plaintiff's claims because he did not specify whether the suit is against Defendants in their official or individual capacity. Further, they contend that, because Plaintiff did not specify the capacity of the suit, he sued every Defendant in their official capacities only. (ECF No. 18, PageID #101.)

### I.A.     Official and Individual Capacity Claims

No *per se* rule requires that a Section 1983 plaintiff affirmatively plead "individual capacity" in the complaint. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). Instead, the Sixth Circuit applies a "course of proceedings" test to determine whether Section 1983 defendants received notice of the plaintiff's intent to hold them personally liable. *Id.* Under this inquiry, courts consider several factors, including the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of and the defenses raised in response to the complaint. *Id.* at 772 n.1.

Here, Plaintiff alleges that Officer Simpson used excessive force when he stomped on Plaintiff's head and severely twisted his wrists. Also, Plaintiff alleges that Lts. Davis and Prate used him as a human battering ram against a door.

8

Accepting the facts alleged as true, Plaintiff's amended complaint attributes each of the Defendants' actions to them personally.  As discussed below, an official capacity suit against Defendants would stem from policies and procedures of the officials or inadequate training claims.  *See Sheperd v. Wellman*, 313 F.3d 963, 968–69 (6th Cir. 2002).

Further, Plaintiff seeks monetary damages.  Though not dispositive, *id.* at 969, this requested relief indicates that Mr. Kirkland brings the suit against Defendants in their individual capacities.  *See Moore*, 272 F.3d at 774; *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (noting that compensatory damages are not available in official capacity suits against State employees).  Finally, the nature of the claims asserted provides Defendants "clear notice" that they "face[] individual liability of some sort for the conduct" described in the amended complaint.  *Moore*, 272 F.3d at 774.  Therefore, the Court construes Plaintiff's amended complaint as alleging claims against the State actors in their individual capacities.

To the extent that Plaintiff sues the individual Defendants in an official capacity, State officials sued in an official capacity for damages are not "persons" subject to liability under Section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  So, the Court turns next to whether Plaintiff may sue the government itself.

## II.B.   Claims Against the State and ODRC

For the State of Ohio and ODRC, the Eleventh Amendment provides immunity from suits brought in federal court.  *See Welch v. Texas Dep't of Highways & Publ. Transp.*, 483 U.S. 468 (1987).   States may waive their Eleventh Amendment immunity, but Ohio has not done so for cases brought under Section 1983.  *See Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992).  In enacting Section 1983, Congress did not disturb the States' Eleventh Amendment immunity.  *Id.*  Accordingly, a State is not a person subject to suit under Section 1983.  *See Will*, 491 U.S. at 71.

The same immunity extends to State agents and instrumentalities, like ODRC. *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008).  Therefore, Plaintiff fails to state a claim against the State of Ohio and the ODRC.  Therefore, the Court **GRANTS IN PART** Defendants' motion to dismiss the State of Ohio and ODRC and all claims to the extent they are brought against individuals in their official capacities.

## II.   Personal Involvement and *Respondeat Superior*

Defendants argue that Plaintiff cannot assert a Section 1983 claim against any individual who lacked personal involvement in the events alleged to have occurred. It is well established that a civil rights plaintiff must allege the defendant's personal involvement under Section 1983 because liability cannot arise under a theory of *respondeat superior* or vicarious liability.  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 692 (1978); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Absent proof of personal involvement, a Section 1983

10

plaintiff must "show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 2008).

Here, Plaintiff sues various parties, but alleges that only Lt. Davis, Lt. Prate, and Officer Simpson were involved in the excessive force incident. The other remaining individual Defendants—Chambers-Smith, Davis, Major Hill, and a mail room supervisor—are not mentioned in the body of the pleading. Plaintiff has not alleged that these remaining Defendants committed any actual acts, had any personal involvement in them, or acquiesced in the conduct of their employees.

To demonstrate governmental liability for the acts of its employees, a plaintiff must allege that the violation of his constitutional rights resulted from a governmental policy or the tolerance of a custom of such violations. *Monell*, 436 U.S. at 694. Plaintiff fails to make any allegations suggesting even by inference that the excessive force alleged occurred because of a custom or policy. In response to Defendants' motion to dismiss, Plaintiff argues that several officers (some of whom are not named Defendants) violated ODRC protocol. But this response does nothing more than assert conclusory labels without more. Such bare-boned allegations do not suffice to state a claim. *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 698 (6th Cir. 2018) (affirming dismissal of a *Monell* claim because the plaintiff failed to allege facts suggesting that the police officers' constitutional violations were the result of a custom, policy, or practice of the city).

11

For these reasons, the Court **GRANTS IN PART** Defendants' motion to dismiss. Plaintiff's claims may proceed only against Lt. Davis, Lt. Prate, and Officer Simpson in their individual capacities.

### III. Voluntary Statement of Facts

Next, Defendants contest the propriety of Plaintiff's voluntary statement of facts. They do so under Rule 20(a)(2), which governs joinder of defendants. (ECF No. 18, PageID #104.) Courts construe similar filings as supplemental pleadings under Rule 15(d), which is meant to "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Mustin v. Guiller*, 563 F. Supp.3d 715, 722 (N.D. Ohio 2021) (quoting Fed. R. Civ. P. 15(d)); *Trevino v. Kelly*, 245 F. Supp. 3d 935, 943 (E.D. Mich. 2017). Relief under Rule 15(d) may include the addition of new defendants and claims—but only if joinder complies with the other Rules of Civil Procedure and properly relates to the originally stated claims. *See Griffin v. County Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226–27 (1964); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1506, 1507 (3d ed. 2023). And the timing of Plaintiff's pleadings poses no problem—the events described in the voluntary statement of facts occurred five days after he filed his amended complaint. (*See* ECF No. 8, PageID #40.)

As noted above, this voluntary statement, treated as a supplemental pleading, makes allegations about medical treatment Mr. Kirkland received in March 2023. And Plaintiff expressly invoked the Court's jurisdiction by alleging that his medical treatment resulted in cruel and unusual punishment. *See Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (recognizing prisoner claims of cruel and

12

unusual punishment in the medical treatment context under the Eighth Amendment).  Mr. Kirkland describes this episode as involving medical "malpractice." (ECF No. 8, PageID #40.)  To the extent those allegations state a claim for medical malpractice, they fail as a matter of law.

When it comes to medical malpractice, the Eighth Amendment forecloses such claims.  This is so because the Supreme Court interprets the Constitution as requiring more than negligence.  Under Eighth Amendment jurisprudence, a defendant must know of and disregard an excessive risk to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In this way, this standard prevents constitutionalizing medical malpractice claims. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff's complaints about the shot he received, his side effects, and the nurse's failure to wear gloves sound in State tort law and do not rise to the level of deliberate indifference under the Eighth Amendment. *See Sanderfer v. Nichols*, 62 F.3d 151, 153–54 (6th Cir. 1995).

But those same allegations might give rise to a claim for battery, essentially another theory of recovery under Section 1983 similar to the excessive use of force claim against already addressed.  But this theory runs into a different problem.  At no point in time has Plaintiff attempted to serve any individual implicated in this episode, let alone secured service of process to bring him or her before the Court. Moreover, these events appear to have no relation to the facts giving rise to Plaintiff's

claims against Lt. Davis, Lt. Prate, and Officer Simpson.  Therefore, joining them to the complaint here is not procedurally proper.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

## IV.  Plaintiff's Excessive Force Claim

A court should not dismiss a *pro se* Section 1983 complaint unless it fails to set forth facts showing a violation of any constitutional provision.  *Puckett v. Cox*, 456 F.2d 233, 236 (6th Cir. 1972).  To state a Section 1983 claim, Plaintiff must plead that he suffered:  (1) a deprivation of rights secured by the Constitution or federal statutes (2) committed by a person acting under color of state law.  *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).

Plaintiff's claim arises under the Eighth Amendment, which protects a convicted prisoner's right to be free from the use of excessive force by prison officials.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  This right does not render "every shove or restraint" by a prison official a constitutional violation.  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).  At times, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law."  *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002).  Therefore, "[h]arm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations, not just uncomfortable or 'even harsh' ones."  *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (citations omitted).  An Eighth Amendment claim consists of both subjective and objective components.  *Cordell*, 759 F.3d at 580.

14

Defendants maintain that Plaintiff fails to allege an excessive force claim because he assaulted an officer, and it appeared that "Defendants Davis and Prat[e] were responding to the assault." (ECF No. 24, PageID #132.) Further, Defendants argue that any force they might have used was justified and "reasonably measured to maintain order and discipline." (*Id.*, PageID #133.)

### IV.A. Subjective Component

The subjective component focuses on the prison official's state of mind and "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell*, 759 F.3d at 580 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Also, it involves consideration of the need for the application of force, the amount of force used, and the extent of the injury inflicted. *Whitley*, 475 U.S. at 319.

The amended complaint alleges that Officer Simpson handcuffed and severely twisted Plaintiff's wrists, causing permanent nerve damage after Plaintiff assaulted him. After being handcuffed, Plaintiff alleges that he did not resist, but that Officer Simpson stomped on his head. The Sixth Circuit has held that prison officials may use appropriate force to regain control of an aggressive inmate. *See, e.g.*, *Griffin v. Hardrick*, 604 F.3d 949, 954–55 (6th Cir. 2010). But at this stage in the proceedings, the Court cannot say what amount of force would be considered a reasonable or proportionate response by Officer Simpson or whether his response crossed the line into conduct for which he is liable. If Plaintiff was effectively restrained following the assault, then he might be able to prevail on his claims.

15

After the interaction with Officer Simpson, the amended complaint alleges that Lts. Davis and Prate used Plaintiff's head as a battering ram to open a door. Defendants argue that they were merely responding to the assault and "secured Plaintiff and took him away from the situation." (ECF No. 24, PageID #133.) That might well prove true. But with no other facts to suggest that Plaintiff—who was allegedly restrained in handcuffs and injured by Officer Simpson—posed an additional danger, again at this stage of the proceedings, Defendants might have "lacked a good-faith reason to use [Plaintiff] as a human battering ram." *Cordell*, 759 F.3d at 583. Without more information, it is "difficult to reconcile the threat" Plaintiff posed to Defendants, "other prison officials, other inmates, or outside individuals with the amount of force" they allegedly used. *Id.* The Court appreciates that "prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Combs*, 315 F.3d at 557 (citation and quotation omitted). At the pleading stage, however, the Court cannot say as a matter of law that the facts as alleged fail to state a claim.

### IV.B. Objective Component

The objective component requires that the "pain inflicted to be sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (cleaned up). To fulfill this element, the prisoner need not have suffered serious injury, but the defendant must have used more than "*de minimis* force." *Johnson*, 79 F.4th at 616 (citing *Hudson*, 503 U.S. at 9–10).

If Plaintiff's allegations are true, all three Defendants used more the *de minimis* force in a matter that a finder of fact could find meets the objective standard.

Plaintiff alleges that the force was serious enough to cause permanent nerve damage and a large knot to form on his head. (ECF No. 6, PageID #24–25.) *See Schreiber v. Moe*, 596 F.3d 323. 332 (6th Cir. 2010) (holding that an officer's strike of a "neutralized" and handcuffed suspect was objectively unreasonable); *Cordell*, 759 F.3d at 577–79, 585–86 (holding that an officer's ramming of a handcuffed inmate headfirst into a concrete wall was objectively unreasonable). But again, the extent of force used, and the severity of Plaintiff's injuries remains to be proved through discovery.

Accordingly, construing the facts alleged by Plaintiff in the light most favorable to him, as the Court must on a motion to dismiss, Plaintiff pled sufficient facts satisfying both the subjective and objective components of an Eighth Amendment excessive force claim. Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiff's excessive force claim as to Lt. Davis, Lt. Prate, and Officer Simpson.

## CONCLUSION

For all these reasons, the Court determines that Plaintiff states a claim for excessive force under the Eighth Amendment against Officer Simpson, Lt. Prate, and Lt. Davis in their individual capacities. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

**SO ORDERED.**

Dated:  December 19, 2023

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio

18