# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ELLIOT KIRKLAND, | ) | Case No. 4:23-cv-00305 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge James E. Grimes |
| | ) | |
| ODRC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Elliot Kirkland, representing himself, brought this civil rights action alleging that various law enforcement officials at Trumbull Correctional Institution used excessive force against him.  Defendants move for summary judgment on his claim.  (ECF No. 31.)  For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

## STATEMENT OF FACTS

Mr. Kirkland is currently serving a life sentence in the custody of the Ohio Department of Rehabilitation and Correction.  (ECF No. 31-4, PageID #198–203.) Currently, he is incarcerated at the Toledo Correctional Institution, but the events leading to this suit occurred at the Trumbull Correctional Institution.  (ECF No. 6, PageID #33.)  On January 10, 2023, Mr. Kirkland admittedly assaulted Defendant Officer Emmanuel Simpson.  (*Id.*, PageID #24.)  Following the incident, Mr. Kirkland alleged that several officers used excessive force against him—including using his head as a battering ram against a door and severely twisting his wrists.  (*Id.*, PageID

#24–25; ECF No. 23-2, PageID #122.)  In response to these allegations, Defendants proffer a use of force incident report, declarations of each Defendant regarding the incident, internal prison communication records, and video evidence.

### A.     Use of Force Report

After the incident, Lieutenant Theresa L. Carter prepared a use of force report. (ECF No. 31-4, PageID #207–17.)  The report states that Mr. Kirkland, unprovoked, approached Officer Simpson's desk in the housing unit, "crossed the red tape and came around the desk and punched [Officer Simpson] on the left side of his face." (*Id.*, PageID #208.)    In response, Officer Simpson "threw multiple punches" at Mr. Kirkland. (*Id.*)  A nearby officer, Officer Dominic Fusillo, grabbed Mr. Kirkland by the waist and took him to the ground.  (*Id.*, PageID #208 & #214.)  Once on the ground, Officer Simpson "threw multiple knee strikes toward [Mr. Kirkland] to defend himself and to gain compliance." (*Id.*, PageID #208.)  Officers Simpson and Fusillo were then able to place Mr. Kirkland in handcuffs.  (*Id.*)

Officer Fusillo then escorted Mr. Kirkland to the medical unit, where medical staff determined that he was intoxicated by an unknown substance.  (*Id.*, PageID #208, #212 & #224.)  Reportedly, Mr. Kirkland was screaming and being aggressive while the staff assessed him for injuries.  (*Id.*, PageID #208 & 220.)  Staff observed Mr. Kirkland vomiting, and he had minor abrasions on his left and right brows, no visible bruising on his face, and a small amount of swelling on his right cheek.  (*Id.*, PageID #220.)  Officer Fusillo did not report any injuries.  (*Id.*, PageID #216.)  Officer Simpson suffered a 10-inch abrasion on his left leg.  (*Id.*, PageID #208 & #213.)

Upon review of the use of force report, Deputy Warden Brian L. Evans and Warden Anthony K. Davis determined that the use of force was justified and appropriate.  (*Id.*, PageID #210–11.)

## B.    Declarations

Defendant Ronald Pratt's declaration recounts his memory of the events.  (ECF No. 31-5, PageID #228–29.)  After the incident, Mr. Pratt responded to a "signal 3 (man down alarm)" in the housing unit.  (*Id.*, ¶ 5, PageID #228.)  Once Mr. Kirkland was taken to the medical unit by "Yard escorts," Mr. Pratt remained in the housing unit to institute lockdown measures.  (*Id.*, ¶¶ 8–9.)  He was "not involved in the transport of [Mr. Kirkland]," he did not "knee or spit on" Mr. Kirkland, and never had physical contact with Mr. Kirkland on January 10, 2023.  (*Id.*, ¶ 11, PageID #229.)

Officer Simpson's declaration mirrors the description of the incident in the use of force report.  (ECF No. 31-6, PageID #230–31.)  He stated that on January 10, 2023, Mr. Kirkland entered the housing unit and received commissary.  (*Id.*, ¶ 5, PageID #230.)  Then, Mr. Kirkland approached Officer Simpson's desk and punched him on the left side of his face.  (*Id.*, ¶ 5.)  Officer Simpson "administered punches and knee strikes to gain compliance" and handcuffed Mr. Kirkland with the help of Officer Fusillo.  (*Id.*, ¶ 6.)  He stated that, once Mr. Kirkland was "compliant with orders and he presented no harm to himself or anyone else[,] no other force was used [against him]."  (*Id.*, ¶ 8, PageID #231.)

Finally, Defendant Officer James Davis provided a declaration.  (ECF No. 31-7, PageID #232–33.)  On January 10, 2023, Officer Davis was assigned to the transitional program unit.  (*Id.*, ¶ 4, PageID #232.)  Officer Davis processed

3

Mr. Kirkland in the unit after his medical evaluation.  (*Id.*, ¶ 5.)  He did not transport Mr. Kirkland from the housing unit to the medical unit or from the medical unit to the transitional program unit.  (*Id.*, ¶ 6.)  Additionally, he was not involved in any investigation of the use of force, he did not witness any force being used against Mr. Kirkland, nor did he apply any force to Mr. Kirkland.  (*Id.*, ¶¶ 6–7, PageID #232–33.)

### C.    Prison Grievance Communications

Defendants proffer all records of communications, including Informal Complaint Resolutions ("ICRs"), grievances, and kites that Mr. Kirkland submitted from January 1, 2023 through February 13, 2024 and a declaration from Assistant Chief Inspector of the Ohio Department of Rehabilitation and Correction, Uriah Melton.  (ECF No. 31-1, PageID #180–82; ECF No. 31-2, PageID #183–95.)  Between those dates, Mr. Kirkland used official prison communication procedures twelve times.  (ECF No. 31-2, PageID #183–95.)  Of the twelve communications, Mr. Kirkland submitted two ICRs.  (*Id.*)  The rest of the institutional communications were kites.  (*Id.*)

The first ICR detailed Mr. Kirkland's complaints about an interaction with a correctional officer and his allegation that the officer spit on his food tray.  (*Id.*, PageID #190.)  The second concerned Mr. Kirkland's attempt to go to the medical unit to contact his family.  (*Id.*, PageID #192.)  Mr. Kirkland did not submit an ICR concerning the January 10, 2023 incident or his escorts to the medical unit and the transitional program unit.  The only reference Mr. Kirkland made to the January 10,

4

2023 incident came in a kite, in which he reported that he was being bothered "about the situation that took place . . . on 1-10-23 . . . ." (*Id.*, PageID #183.)

In Mr. Kirkland's complaint, he alleged that he "couldn't file a detailed informal or a detailed grievance" but that he sent one to the "correctional institutional inspectional committee [and] nothing was done." (ECF No. 6, PageID #24.) There is no evidence in the record of that complaint or of any further grievance or appeal arising from it.

Mr. Melton stated that upon arrival to an Ohio Department of Rehabilitation and Correction institution, all inmates are provided written and oral instructions on how to use grievance procedures. (ECF No. 31-1, ¶ 13, PageID #182.) Inmates access the grievance system electronically through ViaPath tablets. (*Id.*, ¶ 10, PageID #181). Every inmate is provided a tablet, even those in the transitional program unit. (*Id.*) Mr. Melton described the three-step grievance procedure, which covers complaints about "policies, procedures, conditions of confinement, and/or actions of institutional staff," and that this process is available to all inmates, regardless of disciplinary status. (*Id.*, ¶¶ 5–9, PageID #180–81.)

### D. Video Evidence

Defendants proffer several videos including surveillance footage of the assault and its aftermath on January 10, 2023 and body camera footage from officers in the housing unit after the incident occurred. (ECF No. 30.) Due to technical problems, the Court was unable to watch the surveillance video of the assault. But the body camera video shows different officers instituting lockdown procedures in the housing

5

unit after the assault occurred and after Mr. Kirkland had been escorted to the
medical unit.  (*Id.*)

## STATEMENT OF THE CASE

Plaintiff filed an amended complaint on March 30, 2023 (ECF No. 6) and a
voluntary statement of facts on April 3, 2023 (ECF No. 8).  On August 28, 2023,
Defendants moved to dismiss Plaintiff's claims.  (ECF No. 18.)  The Court granted in
part and denied in part Defendants' motion, allowing the case to go forward on
Plaintiff's excessive force claim against Officer Simpson, Mr. Pratt, and Lieutenant
Davis.  (ECF No. 25.)

After exchanging evidence with Plaintiff, Defendants moved for summary
judgment on Plaintiff's remaining excessive force claim.  (ECF No. 31.)  Defendants
argue that they are entitled to summary judgment because (1) Mr. Kirkland did not
exhaust his administrative remedies as mandated by Ohio law and the Prison
Litigation Reform Act; (2) Lt. Davis and Mr. Pratt were not personally involved in
any use of force against Mr. Kirkland; and (3) Officer Simpson's use of force was not
excessive because it was used in self-defense and to gain compliance of Mr. Kirkland,
who suffered no visible injuries.  As of the date of this order, though nearly two
months have elapsed since Defendants filed their motion on May 16, 2024, Plaintiff
has not responded to or opposed Defendants' motion for summary judgment.  Nor has
he requested an extension of time to do so.

6

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The non-moving party must then "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 250).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court, instead, determines "whether the evidence presents a sufficient disagreement to require submission to a jury" or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  In doing so, the Court must view the evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

7

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgement is not appropriate. *Tokmenko*, 488 F. Supp 3d at 576 (citing *Anderson*, 477 U.S. at 250).  If the evidence, however, "is merely colorable or is not significantly probative," summary judgment for the movant is proper.  *Id.*  The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

"Just as plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.*  (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

When faced with an unopposed motion for summary judgment, the Court must consider supporting evidence and determine whether the movant has met its burden. *Federal Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629–30 (6th Cir. 2014); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).  However, there is no *sua sponte* obligation for the trial court to scour the record in search of genuine disputes of material fact.  *See Guarino*, 980 F.2d at 404.  To do so would be "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:  seeking out facts, developing

legal theories, and finding ways to defeat the motion." *Id.* at 406.  Accordingly, the Court "may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, at *3 (6th Cir. 2000) (Table) (citing *Guarino*, 980 F.2d at 410).

## I.  Exhaustion

Defendants argue that Mr. Kirkland failed properly to exhaust his available administrative remedies as the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997, requires before filing suit in federal court.  The Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prison confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Under the Prison Litigation Reform Act, exhaustion of available administrative remedies is a mandatory prerequisite to filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that the "PLRA's exhaustion requirement applies to all inmate suits about prison life" including "whether they allege excessive force or some other wrong").  Even if the administrative process does not provide the monetary relief an inmate seeks, the inmate must first pursue all available administrative remedies before initiating suit.  *Porter*, 534 U.S. at 524.

The Act does not provide a uniform exhaustion standard.  Instead, the inmate's correctional institution defines the applicable administrative rules and procedures. *Jones*, 549 U.S. at 218.  To comply with the exhaustion requirement, an inmate must

"take advantage of each step the prison holds out for resolving the claim internally and by following critical procedural rules of the prison's grievance process." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (cleaned up).  If an inmate fails to exhaust, the defendants may raise exhaustion as an affirmative defense in which they bear the burden of proof.  *Id.* at 295 (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)).  A dismissal for failure to exhaust administrative remedies under the Act is without prejudice.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

## II.     The Grievance Procedure

Ohio law dictates a three-step "inmate grievance procedure" for all inmates in the custody of the Ohio Department of Rehabilitation and Correction.  Ohio Admin. Code § 5120–9–31(J).  First, within fourteen calendar days of the incident, the inmate must file an informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint" that is specific as "to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." *Id.*; *id.* at § 5120–9–31(J)(1).  The appropriate staff member then has seven calendar days to provide a written response.  Ohio Admin. Code § 5120–9–31(J)(1).  If the staff member does not provide a response, the informal complaint step is waived, and the inmate may proceed to step two.  *Id.*

Second, if the inmate is dissatisfied with the informal complaint response or if that requirement has been waived, "the inmate may file a notification of grievance with the inspector of institutional services" within fourteen calendar days from the

10

response or waiver of the informal complaint step.  Ohio Admin. Code § 5120–9–31(J)(2).  The inspector of institutional services then has fourteen days to provide a written response to the grievance.  *Id.*  If a disposition has not been rendered after twenty-eight days from receipt of the grievance, the complaint is deemed "unresolved," and the inmate may proceed to step three.  *Id.*

Third, if the inmate is dissatisfied with "the disposition of grievance, the inmate may file an appeal with the office of the chief inspector" within fourteen calendar days of the disposition of grievance.  Ohio Admin. Code § 5120–9–31(J)(3).

"Although the PLRA's exhaustion requirement is strictly construed, the statute 'contains its own, textual exception to mandatory exhaustion' that applies when remedies are not 'available.'"  *Lamb*, 52 F.4th at 292 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)); 42 U.S.C. § 1997e(a).  An administrative remedy is not "available" to inmates and not subject to the exhaustion requirement where:  (1) the administrative grievance procedure "operates as a simple dead end;" (2) the administrative grievance procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643–44.

## III.  Application

Without question, the record shows that Mr. Kirkland failed to file an ICR detailing specific information like the date, time, place, and personnel or witnesses involved in the incident by January 24, 2023.  Therefore, he failed to fulfill step one of the grievance procedure.  Ohio Admin. Code § 5120–9–31(J)(1) (requiring that the

11

inmate file an ICR within fourteen days of the incident). A review of Mr. Kirkland's electronic grievance communications from January 1, 2023 to February 13, 2023 demonstrates that he did not file a kite or grievance regarding the incident either. Even if the Court construes Mr. Kirkland's complaint that he allegedly filed with the correctional institutional inspectional committee to satisfy his step one requirement, there is no evidence in the record to create a dispute of material fact that Mr. Kirkland failed to complete steps two and three of the grievance procedure. Accordingly, Mr. Kirkland failed to exhaust his administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (requiring "proper exhaustion" of administrative remedies under the PLRA, meaning that the prisoner must use "all steps that the [prison] holds out").

On this record, the inmate grievance procedure was "available" to Mr. Kirkland within the meaning of the Prison Litigation Reform Act because the record demonstrates that he filed two other ICRs about unrelated events within a month of the incident. (*See* ECF No. 31-2, PageID #190 & 192); *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 940 (S.D. Ohio 2018) (finding that grievance procedures were available to an inmate who used them to file other grievances unrelated to the subject matter of the lawsuit). Additionally, the communication records show that the prison officials responded to and investigated his claims in those ICRs. Therefore, the record does not support an argument that availing himself of the grievance procedure would be futile. Even viewing the facts in the light most favorable to Mr. Kirkland, as the Court must in the present procedural posture, the grievance procedure is not a "dead

end" or "incapable of use," or that prison officials would have "thwart[ed]" Mr. Kirkland from taking advantage of it.  *See Ross*, 578 U.S. at 643–44.

Summary judgment is appropriate in the absence of a genuine dispute as to any material fact regarding Plaintiff's failure to exhaust, and Defendants have met their burden.  *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023).  For this reason, the Court need not consider Defendants' alternative bases for summary judgment.  *See Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001) (collecting cases) (noting that federal courts should avoid unnecessary adjudication of constitutional issues if there is a dispositive statutory or nonconstitutional basis for resolution of the case).

## CONCLUSION

For all these reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim against Defendants for failure to exhaust his administrative remedies.

**SO ORDERED.**

Dated:  July 9, 2024

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio